UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

.

**SIGIT TRI ASMORO**, et al.,

Plaintiffs,                                        No 1:10-cv-01235 MCA/WDS

v.

**RIGSTAFF TEXAS LLC**., et al.,

Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** is before the Court on *Schlumberger Defendants' Opposed Motion*

*To Dismiss* [Doc 8] and *Defendants RigStaff Ltd., RigStaff Texas LLC, Douglas White,*

*Joseph P. Delorenzo, And Walter Bliss' Motion To Dismiss, Answer, And Affirmative And*

*Other Defenses* [Doc 11].  Having considered the parties' submissions, the relevant law,

and otherwise being fully advised in the premises, the Court grants in part and denies in

part *Schlumberger Defendants' Opposed Motion To Dismiss* [Doc 8] and *Defendants*

*RigStaff Ltd., RigStaff Texas LLC, Douglas White, Joseph P. Delorenzo, And Walter*

*Bliss' Motion To Dismiss, Answer, And Affirmative And Other Defenses* [Doc 11].

**I.     BACKGROUND**

Plaintiffs, seven Indonesian oilfield workers, allege that in 2005 the Schlumberger

Defendants (Schlumberger Ltd. and  Schlumberger Technology) agreed with the RigStaff

Defendants (RigStaff Texas, LLC, RigStaff, Ltd., Douglas L. White, Joseph P.

Delorenzo, and Walter Bliss) to import foreign workers to work in the Schlumberger

Defendants' oilfields.  The RigStaff Defendants secured the appropriate work visas and offered contracts to foreign workers (who had been selected by the Schlumberger Defendants and who included Plaintiffs).  The work contracts indicated that Plaintiffs would work for RigStaff, would be paid an hourly wage, and would be employed until November 1, 2006.

When Plaintiffs arrived in Farmington, New Mexico in early 2006, they allegedly found themselves under the exclusive control of the Schlumberger Defendants.  RigStaff paid Plaintiffs from funds provided to RigStaff by Schlumberger.  Two of the plaintiffs were transferred to a Wyoming work site.  Plaintiffs were not paid by the hour, but instead by the day, and  were often required to work in excess of 80 hours per week.  They did not receive overtime.  The work contracts were terminated by the Schlumberger Defendants on August 22, 2006.

On December 23, 2010, Plaintiffs filed a *Complaint* [Doc 1] against all Defendants.  They allege that Defendants failed to pay them as contracted, were unjustly enriched, and committed fraud with respect to hours and overtime.  They further allege that the labor practices violated the Fair Labor Standards Act (FLSA), the New Mexico Minimum Wage Act, and Wyoming law.

Earlier, in 2008, twenty other plaintiffs, who worked under the same contract as the current Plaintiffs, took part in an FLSA collective action suit brought against essentially the same defendants (the Paulus action).  See Paulus v. RigStaff Texas LLC,

No. 08cv1104 GBW/RLP (D.N.M.).  That suit settled, and Plaintiffs did not take part or

benefit.  Id., No. 08cv1104, Document No. 201.

The Schlumberger Defendants have filed *Schlumberger Defendants' Opposed*

*Motion To Dismiss* [Doc 8], seeking dismissal of all of Plaintiffs' claims.  The RigStaff

Defendants have joined that *Motion* and filed their own, *Defendants RigStaff Ltd.,*

*RigStaff Texas LLC, Douglas White, Joseph P. Delorenzo, And Walter Bliss' Motion To*

*Dismiss, Answer, And Affirmative And Other Defenses* [Doc 11], which includes an

additional argument for the dismissal of the breach of contract claim against the

Individual Defendants.

## II.   ANALYSIS

### Standard

Under Fed. R. Civ.P. 12(b)(6), a court may dismiss a complaint for "failure to state

a claim upon which relief can be granted."  The sufficiency of a complaint is a question of

law, and when considering and addressing a motion to dismiss pursuant to rule 12(b)(6), a

court must accept as true all well-pleaded factual allegations in the complaint, view those

allegations in the light most favorable to the non-moving party, and draw all reasonable

inferences in the plaintiff's favor.  See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir.

2006).  Further, in order to withstand a rule 12(b)(6) motion, a complaint must contain

"enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal citation omitted) (Iqbal). If a plaintiff cannot nudge the claims "across the line from conceivable to plausible," the complaint must be dismissed. Id. at 570.

In handing down Twombly, the United States Supreme Court invalidated the longstanding rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Conley standard proved problematic over the years because it suggested that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46). As a result, defendants may be forced to bear the burden and expense of discovery before they are afforded a real opportunity to seek the dismissal of groundless claims, while plaintiffs may use the burdensome discovery process as leverage to induce otherwise unjustified settlement of such groundless claims. See Twombly, 550 U.S. at 557-59.

A complaint is now subject to dismissal under the new standard if it does not "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this*

plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge

at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

Two "working principles" underlie the Twombly standard. Iqbal, 129 S.Ct. at

1949.

> First, the tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.  Threadbare
> recitals of the elements of a cause of action, supported by mere conclusory
> statements, do not suffice. . . .  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.  Determining
> whether a complaint states a plausible claim for relief will . . . be a context-
> specific task that requires the reviewing court to draw on its judicial
> experience and common sense.

Id. at 1949-50 (internal citations omitted).  Thus, in order to evaluate a motion to dismiss,

the Court engages in a two-part inquiry by initially identifying those allegations that are

nothing more than legal conclusions and therefore "not entitled to the assumption of

truth" and then considering whether the factual allegations "plausibly suggest an

entitlement to relief."  Id. at 1951.

In Defendants' *Motion*, they attack each claim in Plaintiffs' *Complaint*.  In

response, Plaintiffs challenge Defendants' use of evidence apart from the *Complaint*.  The

Court first addresses Plaintiffs' evidentiary arguments, before turning to Defendants'

arguments in support of dismissal.

**A.**     **Exhibits**

"Generally, the sufficiency of a complaint must rest on its contents alone."  Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010).  Under Federal Rule of Civil Procedure 12(d),

> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

In line with this rule, "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."  Prager v. LaFaver, 180 F.3d 1185, 1188 (10th Cir. 1999).  This general rule has three exceptions:  "(1) documents that the complaint incorporates by reference, (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice. . . ."  Gee, 627 F.3d at 1186 (internal quotation marks and citations omitted).

Defendants have submitted five exhibits with the motion to dismiss.  The parties agree that the Court may consider Exhibit 3, which is one of the contracts at issue in the complaint.  With respect to the remaining exhibits, Plaintiffs argue that rather than converting Defendants' motion to dismiss to a motion for summary judgment, Exhibits 1, 2, 4 and 5 should be excluded from this Court's consideration.  Exhibit 1 includes

portions of the oral deposition of defendant Walter Bliss, taken during the <u>Paulus</u> case, as well as some correspondence in that case. Exhibit 2 is the opt-in notice, sent to the putative class in the <u>Paulus</u> case. Exhibit 4 is an excerpt from a book, which Defendants state was provided for "historical perspective only." [Doc 29 at 2] Defendants do not object to the exclusion of Exhibit 4, and Exhibit 4 is thus excluded. The final Exhibit submitted by Defendants, Exhibit 5, is a certification pursuant to 28 U.S.C. § 2403 and Fed. R. Civ. P. 5.1(b), providing notice to the Attorney General of the State of Wyoming that the constitutionality of Section 27-4-114 of the Wyoming Code has been challenged.

Beginning first with Exhibit 5, Defendants argue that this Exhibit is "required by law," and therefore should not be excluded. Rule 5.1(a) requires that a party challenging the constitutionality of a state statute must promptly serve notice of such challenge on the state attorney general. The Rule does not require that the notice be attached as an exhibit to a motion to dismiss. 28 U.S.C. § 2403(b) further requires certification of the fact of a constitutional challenge to a state statute, but does not require attachment of the certification to a motion to dismiss. Thus, Defendants' notion that Exhibit 5 cannot be excluded because it is "required by law," is misplaced.

Despite the conclusion that Exhibit 5 need not be considered because it is "required by law," the Court notes that the contents of Exhibit 5 are the same as the contents of the Schlumberger Defendants' *Notice of Constitutional Question* [Doc. 7], which is a public record filed separately on the docket in the case currently before the Court. As a result, this Court takes judicial notice of the contents of Exhibit 5. <u>Tal v.</u>

Hogan, 453 F.3d 1244, 1265, n. 24 (10th Cir. 2006) (explaining that "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment" and permitting "the court to take judicial notice of its own files and records, as well as facts which are a matter of public record" (internal quotation marks and citation omitted)).  So too with Exhibit 2, the opt-in notice in the Paulus case.  Cursory review of Exhibit 2 demonstrates that it was filed on the docket in the Paulus case, that it was a matter of public record, and it is thus appropriate to take judicial notice of the document.

Exhibit 1 consists of deposition excerpts, a declaration, and correspondence.  The declaration and the email correspondence are both file-stamped to indicate that they were filed on the docket in the Paulus case.  Thus, again, these documents are a matter of public record.  The first parts of Exhibit 1, however, are excerpts from the deposition of Walter Bliss, and there is no indication that these documents were filed in the docket—either independently or as exhibits.  Further, Defendants have provided only selected pages of the deposition testimony.  Because the Court cannot review the entire deposition, for context and accuracy, and because the deposition has not been placed in the public record for review, the deposition portion of Exhibit 1 is excluded from this Court's consideration on Defendants' *Motion*.

Additionally, the non-excluded portion of Exhibit 1, as well as Exhibits 2, 3, and 5 may be be considered—not for the truth of the matters asserted therein—but instead to show the existence of their contents.  See Tal, 453 F.3d at 1265, n. 24 ("[T]he documents

may only be considered to show their contents, not to prove the truth of matters asserted therein." (internal quotation marks and citation omitted)).

In summary, Exhibit 4 is excluded by Defendants' concession, Exhibit 1 is admitted to the extent that the declaration and correspondence were made a part of the public record in the Paulus case, and the non-excluded portion of Exhibit 1, as well as Exhibits 2, 3, and 5 are admitted to demonstrate their contents, but not for the substance of the documents.

## B.    FLSA

Defendants first contend that Plaintiffs' claim under the FLSA was brought outside the relevant statute of limitations.  "The [FLSA] sets forth employment rules concerning minimum wages, maximum hours, and overtime pay."  Kasten v. Saint-Gobain Perf. Plastics Corp., 131 S.Ct. 1325, 1329 (2011).  Under the FLSA, a cause of action

> may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. . . .

29 U.S.C. § 255(a); see McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129 (1988) ("The statute provides that such actions must be commenced within two years except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." (internal quotation marks and citation omitted)). Plaintiffs have alleged willful conduct, and the Court therefore applies the three-year

limitation period.  "Although the statute of limitations is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'"  <u>Solomon v. HSBC Mortg. Corp.</u>, 2010 WL 3069699, at *2 (10th Cir. Aug. 6, 2010) (unpublished opinion) (quoting <u>Aldrich v. McCulloch Props.</u>, Inc., 627 F.2d 1036, 1041 n. 4 (10th Cir.1980)).

   Federal courts to have considered the issue of accrual under the FLSA have consistently and uniformly held that "[a] cause of action is deemed to accrue, as a general rule, at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." <u>Hughes v. Region VII Area Agency on Aging</u>, 542 F.3d 169, 187 (6th Cir. 2008) (internal quotation marks and citation omitted); <u>see also</u> <u>Brown v. United States</u>, 2005 WL 6124306, at *6 (Fed. Cl. June 6, 2005); <u>Singer v. City of Waco, Tex.</u>, 324 F.3d 813, 828 (5th Cir. 2003); <u>Knight v. Columbus, Ga.</u>, 19 F.3d 579, 581 (11th Cir. 1994); <u>Mitchell v. C & S Wholesale Grocers, Inc.</u>, 2010 WL 2735655, at *2 (D.N.J. July 8, 2010); <u>Escobedo v. Dynasty Insulation, Inc.</u>, 694 F.Supp.2d 638, 651-652 (W.D.Tex. 2010); <u>Dixon v. City of Forks</u>, 2009 WL 1608506, at *1 (W.D.Wash. June 9, 2009).  Decisions from within this district have not been to the contrary. <u>See, e.g.</u>, <u>Mistretta v. Sandia Corp.</u>, 1977 WL 17, at *13 (D.N.M. Oct. 20, 1977) ("A separate cause of action for overtime compensation accrues at each regular payday immediately  following the work period during which the services were rendered and for which overtime compensation is claimed.").

Applying this standard, absent any tolling, the statue of limitations in the present case began to run on the final payday after Plaintiffs' work for Defendants ended, in August 2006, and would have terminated in August 2009—over a year before Plaintiffs filed the present cause of action.  Plaintiffs, however, argue that this Court should apply the doctrine of equitable tolling in order to halt the running of the three-year statutory period.  Plaintiffs contend that the limitation period should be tolled (1) because Defendants deliberately concealed Plaintiffs' rights under the FLSA and (2) because Defendants failed to post required notices of FLSA rights.  Defendants respond that equitable tolling should not apply because Plaintiffs knew generally of their rights and any deception ended when Plaintiffs' employment was terminated.

Our Tenth Circuit Court of Appeals has not yet addressed the proper application of the equitable tolling doctrine in the FLSA context.  See Smith v. BNSF Ry. Co., 246 F.R.D. 652, 654 (D.Kan. 2007).  The Circuit has, however, applied the doctrine in the context of Title VII of the Civil Rights Act of 1964, see id., and the Age Discrimination in Employment Act (ADEA).  See Bennett v. Coors Brewing Co., 189 F.3d 1221, 1235 (10th Cir. 1999) ("It is well settled that equitable tolling of the ADEA . . . is appropriate only where the circumstances of the case rise to the level of active deception . . . where a plaintiff has been lulled into inaction by her past employer." (alterations in original) (internal quotation marks and citation omitted)).  Further, in Aldrich, our Circuit noted that "the Supreme Court has declared that equitable tolling principles are 'read into every federal statute of limitation. . . ."  627 F.2d at 1042 (quoting Holmberg v. Armbrecht, 327

U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946)).  For this reason, the Aldrich

Court was "reluctant to interpret a federal statute as imposing an absolute bar."  Id. at

1042.  Considering this authority together with what the Court construes as the parties'

apparent assumption that equitable tolling is appropriate for FLSA claims, the Court will

apply the tolling analyses set forth in the ADEA and Title VII cases.

     "Equitable tolling, like equitable estoppel, provide[s] for tolling of the statute of

limitations when a plaintiff's unawareness of his ability to bring a claim—either

unawareness of the facts necessary to support a discrimination charge or unawareness of

his legal rights—is due to defendant's misconduct."  Bennett, 189 F.3d at 1235 (alteration

in original) (internal quotation marks and citation omitted).  Equitable tolling is

appropriate where "the circumstances of the case rise to a level of 'active deception'

sufficient to invoke the powers of equity."  Martinez v. Orr, 738 F.2d 1107, 1110 (10th

Cir. 1984).  The Martinez Court continued, "[f]or instance, equitable tolling may be

appropriate where a plaintiff has been "lulled into inaction by her past employer, state or

federal agencies, or the courts . . . [or] if a plaintiff is actively misled, or has in some

extraordinary way been prevented from asserting his or her rights, we will permit tolling

of the limitations period."  Id. (internal quotation marks and citation omitted).

     Plaintiffs allege that the employment contract stated that "the workers would be

paid $12.53 per hour and no less than the prevailing wage as set by the U.S. Department

of Labor for the position and the location where the worker would be employed. . . ."

[Doc 1 at 7] They further alleged that Defendants concealed the following facts from

Plaintiffs:

> Schlumberger and the Rigstaff Defendants would not pay Plaintiffs as
> required by all applicable law, including federal and state law;
>
> . . .
>
> Schlumberger intended to require the workers to work more than forty
> hours per week and incurred no additional actual cost under its contract
> with Rigstaff for ordering Plaintiffs to work more than forty hours per week

[Doc 1 at 8]  In addition, Plaintiffs alleged that

> All Defendants concealed or failed to disclose material facts concerning
> Plaintiffs' employment that were within the knowledge of Defendants, and
> that Defendants knew or should have known were not within the knowledge
> of Plaintiffs, including, *inter alia*, the fact that Plaintiffs were entitled to
> overtime and were not receiving the prevailing wages for the jobs and the
> locations where they worked.  Defendants concealed these facts with actual
> knowledge that Plaintiffs did not have equal opportunity to discover the true
> facts and with the intent to induce Plaintiffs to begin working for
> Schlumberger, and then to continue that work.

[Doc 1 at 9]  Once Plaintiffs began to work for Defendants, Plaintiffs allege that

> Schlumberger continued to employ Plaintiffs in excess of 40 hours per
> week knowing, or with reckless disregard for the fact, that they were being
> paid day rates, were not receiving overtime compensation for their work,
> and were not being paid in the requirements of their contracts and the laws
> governing the importation of foreign workers.

[Doc 1 at 10]  These allegations, Plaintiffs argue, support their position that they were

actively deceived by Defendants regarding their rights to overtime pay and that the

"effect" of the deception continued past the termination of employment.

In response, Defendants rely largely on the excluded contents of Exhibit 1.  The portion of Exhibit 1 that the Court has admitted, however, demonstrates that some of the workers complained as early as April 2006 about not receiving overtime and that a RigStaff employee "settled them down" and that after that, the workers "quit complaining about not getting overtime."  [Doc 9-1 at 8]  It is not clear from the exhibit whether the workers who complained are Plaintiffs in the present case.  Nevertheless, this document, while showing that some of the workers were aware that they were not being properly paid, does not demonstrate that they sat on their rights.  Instead, the document indicates that Defendants gave the workers information to "settle[]" them down and to get them to "quit complaining."  Thus, the pleadings before the Court indicate that Defendants arguably misled Plaintiffs into accepting the pay scheme and lulled Plaintiffs into inaction, making appropriate the application of equitable tolling.

This alleged placation of Plaintiffs by Defendants, however, only reasonably lasted so long.  Exhibit 2, properly before the Court, demonstrates that as of May 4, 2009, a notice of lawsuit (Paulus notice) was sent to "[a]ll persons who worked between May 2006 to August 22, 2006 at Schlumberger Technology Corp. work-sites in New Mexico, Utah, Colorado, and/or Wyoming under H-2B visas that were issued to RigStaff Ltd." [Doc 9-2 at 1]  In that notice, all of the identified persons were informed that the Paulus plaintiffs alleged that Defendants (the same Defendants) illegally failed to pay overtime wages.  [Id.]  The *Complaint* makes clear that Plaintiffs were a part of this group—that they worked at Schlumberger between May 2006 and August 22, 2006, in New Mexico

and Wyoming, under H-2B visas issued to RigStaff Ltd.  The <u>Paulus</u> notice thus targeted

a group of individuals that included all Plaintiffs.  Plaintiffs argue that they did not allege

in the *Complaint* either that they received this notice or that the notice itself indicates that

it was sent to the seven specific Plaintiffs in this case.

      This argument—regarding actual receipt of the <u>Paulus</u> notice—is similar to their

argument about Defendants' alleged failure to post notices of FLSA rights, as required by

statute.  Plaintiffs contend that either Defendants did not post the notices or if notices

were posted, they did not think the rights applied to them, or that the English-Indonesian

language barrier prevented them from understanding their rights.  In all of these

arguments, Plaintiffs appear to believe that equitable tolling applies in circumstances

where Defendants did not actively deceive Plaintiffs, but Plaintiffs nevertheless failed to

fully comprehend their rights or have actual knowledge of specific rights.  This

understanding of equitable tolling has been rejected.  <u>See</u> <u>Kale v. Combined Ins. Co. of</u>

<u>Am.</u>, 861 F.2d 746, 753 (1st Cir. 1988) (holding that constructive knowledge of

employment rights prevented the application of equitable tolling and explaining that "the

law imputes knowledge of the ADEA to the plaintiff regardless of whether, in fact, he

knew of his rights").  Similarly, our Circuit requires that for equitable tolling to apply, the

failure to post must be accompanied by an "intent to actively mislead the plaintiff

respecting the cause of action."  <u>Wilkerson v. Siegfried Ins. Agency, Inc.</u>, 683 F.2d 344,

347 (10th Cir. 1982).

Thus, whether Defendants properly posted the notices is relevant only to the extent that they failed to post the notice with the intent to mislead Plaintiffs regarding the cause of action.  Assuming such intent was properly pled, the sending of the Paulus notice served to put Plaintiffs on constructive notice of their rights—regardless of whether they actually received the notice.  Any attempt at deception by Defendants necessarily ended with the distribution of the Paulus notices.  Accordingly, while the *Complaint* sufficiently states facts to support equitable tolling of the three-year limitation period from the time that it would have begun to run in August 2006, that tolling ceased on May 4, 2009.  The time between May 4, 2009 and the filing of the present complaint, on December 23, 2010, is one year, seven months, and 19 days.  As a result, the Court concludes that Plaintiffs' *Complaint* sufficiently states facts to satisfy tolling the FLSA statute of limitations, for the purpose of the present Rule 12(b)(6) motion.

## C.       **Breach of Contract**

Defendants make separate arguments to further the dismissal of the breach of contract claim.  The Schlumberger Defendants maintain that this claim should be dismissed as to them because Schlumberger was not a party to any of the subject contracts.  [Doc 9 at 14]  The Individual RigStaff Defendants, in their *Motion To Dismiss, Answer, And Affirmative And Other Defenses*, contend that they were not all signatories to the contracts, that the contracts were not attached to the *Complaint*, and that although Defendant Bliss did sign the contracts, he did so on behalf of RigStaff and not in a personal capacity.  [Doc 11 at 2]  Plaintiffs respond that both the Schlumberger

Defendants and the Individual RigStaff Defendants are liable on agency theories.  Each

argument is addressed in turn, beginning with the Schlumberger Defendants.

**1.      Schlumberger Defendants**

"An agent is a person who, by agreement with another called the principal,

represents the principal in dealings with third persons or transacts some other business,

manages some affair or does some service for the principal, with or without

compensation."  Madsen v. Scott, 1999-NMSC-042, ¶ 8, 128 N.M. 255, 992 P.2d 268

(internal quotation marks and citation omitted).  The New Mexico Supreme Court has

recently explained that

> Where an agent makes a contract on behalf of an undisclosed principal, the
> third party's liability to the principal is generally the same as the third
> party's liability to the agent.  An undisclosed principal can sue and be sued
> on a contract made in the agent's name because the common law of agency
> regards the agent's actions as the principal's own.  The undisclosed
> principal may at any time appear as such and claim all the benefits of the
> contract from the other contracting party, so far as the principal can do so
> without injury to the other party by the substitution of himself or herself for
> the agent.  Apart from some limited exceptions not relevant here, courts
> have unanimously held that an undisclosed principal becomes a party to
> transactions entered into by the principal's agent.

San Juan Agr. Water Users Ass'n v. KNME-TV,  2011-NMSC-011, ¶ 23, 150 N.M. 44,

257 P.3d 884 (internal quotation marks and citation omitted) (citing Dana v. Boren, 133

Wash.App. 307, 312, 135 P.3d 963, 965 (2006).  Even in circumstances in which the

exceptions are relevant, they are "largely fact specific and a . . . 12(b)(6) motion will

rarely, if ever, be appropriate."  Dana, 133 Wash.App. at 312, 135 P.3d at 965.

The *Complaint* alleges that "[o]n or about November 2005, the RigStaff Defendants, acting on behalf of themselves and Schlumberger, offered work contracts to the workers selected by Schlumberger, including Plaintiffs." [Doc 1 at 6]  Further Plaintiffs have asserted that "Schlumberger and the RigStaff Defendants . . . agreed that the workers would be paid a day rate and would not receive premiums for working overtime no matter how many hours of overtime Schlumberger required the foreign workers to work." [Id. at 4]  Despite this alleged understanding between Schlumberger and RigStaff, the work contracts stated that Plaintiffs would be paid an hourly wage. [Doc 9-3 at 2]

Plaintiffs essentially contend that Schlumberger acted as an undisclosed principal to RigStaff and that as a result, the Schlumberger Defendants are liable for the alleged breach.  The Schlumberger Defendants have not responded to Plaintiffs' agency argument.  Therefore, as it is supported by New Mexico law and properly pleaded in the *Complaint*, the Schlumberger Defendants' motion is denied with respect to this claim.

**2.      Individual RigStaff Defendants**

Generally, "[w]hen an agent with the authority to do so negotiates a contract for a disclosed principal, the agent is not liable personally unless the agent expressly is made a party to the contract or the agent acts in a manner indicating an intent to be bound personally." Romero v. Mervyn's, 109 N.M. 249, 254, 784 P.2d 992, 997 (1989).  Thus, an agency theory does not immediately justify a claim for contract damages against the

Individual RigStaff Defendants, because RigStaff was a disclosed principal in this scenario.

Plaintiffs argue that the Individual RigStaff Defendants operated together, under an assumed name, "RigStaff, Inc." This is based on Defendant White's signing the contracts as the president of "RigStaff, Inc.," when the actual entity's name is "Rigstaff Texas LLC." Plaintiffs therefore allege in the *Complaint* that "Defendants RigStaff Texas LLC, RigStaff Ltd., White, Bliss, and [Del]orenzo (collectively the 'RigStaff Defendants') all did business under the assumed names 'RigStaff' and 'RigStaff, Inc.'" [Doc 1 at 2] In their Response, Plaintiffs argue that RigStaff, Inc. is a nonexistent entity that was purposefully utilized in dealings with Plaintiffs in order to mislead. [Doc 17 at 20] Further, Plaintiffs maintain that the Individual Defendants are liable on the contract because they purported to act as agents for a nonexistent entity. [Id.]

Plaintiffs cite an unpublished Tenth Circuit case, which clearly explains the application of Utah law, see Shelter Mortg. Corp. v. Castle Mortg. Co., L.C., 117 Fed.Appx. 6, 13-15 (10th Cir. 2004), as well as the Restatement (Second) of the Law of Agency § 326 (1958). With respect to Shelter Mortg. Corp., Plaintiffs have failed to demonstrate that the limited liability corporation laws of the state of Utah should determine whether they have properly pleaded a New Mexico breach of contract cause of action. See 117 Fed.Appx at 14-15 ("The provision [of Utah law] regarding the liability of the individual acting before the limited liability company's existence is just as clear."); see also Tucker v. R.A. Hansen Co., Inc., 956 F.2d 215, 217 (10th Cir. 1992) ("When

deciding diversity cases, federal courts apply the law of the state in which they are sitting.").

Turning to New Mexico law, NMSA 1978, § 53-18-9 (1967) states that "[a]ll persons who assume to act as a corporation without authority to do so are jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." Plaintiffs' *Complaint*, however, does not sufficiently state facts to support individual liability for breach of contract under Section 53-18-9. Although Plaintiffs alleged that the RigStaff Defendants did business under an assumed name, "'[i]t seems to be universally recognized that a corporation may do business under an assumed name, or under a name differing from its true corporate name.'" Preferred Builders, S.W., Inc. v. Ghaffari, No. 29,326, 2011 WL 1935479, * 4 (N.M. Ct.App. March 31, 2011) (quoting Spain Mgmt. Co. v. Packs' Auto Sales, Inc., 54 N.M. 64, 68, 213 P.3d 433, 435 (1950)). Thus, it is not the use, but the *unauthorized* use, of an assumed name that will lead to personal liability under Section 53-18-9. The *Complaint* states no factual allegations to the effect that the RigStaff Defendants were not authorized to act as a corporation.

This analysis is not contrary to the Restatement principles cited by Plaintiffs. Section 326 of the Restatement of the Law of Agency states that "[u]nless otherwise agreed, a person who, in dealing with another, purports to act as agent for a principal whom both know to be nonexistent or wholly incompetent, becomes a party to such a contract." Comment b to Section 326, explains that the "classic illustration" of the rule is a scenario in which a promoter "makes an agreement with another on behalf of a

corporation to be formed." While the intent of the parties in such a situation is a "matter of interpretation on the facts of the individual case," id. cmt. b, there is no allegation in the present case that Plaintiffs were not aware that they were contracting with an entity—a corporation. Thus, it would appear that Section 326 does not provide guidance in the present circumstances.

The RigStaff Defendants' *Motion*, [Doc 11] is therefore granted in this regard, and the breach of contract claim against the Individual RigStaff Defendants is dismissed.

## D.   Unjust Enrichment

Defendants next contend that Plaintiffs' unjust enrichment claim is barred by the applicable statute of limitations. [Doc 9 at 11] Plaintiffs respond that the statue of limitations was tolled by the filing of the Paulus case. [Doc 17 at 16-17] The parties appear to agree that the statute of limitations began to run on January 1, 2006. The parties also agree that New Mexico and Wyoming provide the relevant statutes of limitations, and in both states, a claim for unjust enrichment must be filed within four years. See NMSA 1978, § 37-1-4 (1880); W.S. 1977 § 1-3-105(iv)(c).

Plaintiffs base their tolling argument for this claim on American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974) (American Pipe) and Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983). In American Pipe, the plaintiffs filed a class action suit 11 days before the statute of limitations was to expire. 414 U.S. at 541. The district court denied class certification, and eight days after the order was entered, the putative class members filed motions to intervene. Id. at 543-44. The district court denied the motions

to intervene, concluding that the limitations period had expired and was not tolled by the

institution of a class action on behalf of the putative class members.  Id. at 544.  The

Supreme Court of the United States disagreed and held that

> in this posture, at least where class action status has been denied solely
> because of failure to demonstrate that 'the class is so numerous that joinder
> of all members is impracticable,' the commencement of the original class
> suit tolls the running of the statute for all purported members of the class
> who make timely motions to intervene after the court has found the suit
> inappropriate for class action status.

Id. at 552-53.  This rule, the Court reasoned, is consistent with the "policies of ensuring

essential fairness to defendants and of barring a plaintiff who has slept on his rights. . . ."

Id. at 554 (internal quotation marks and citation omitted).  This is because "a named

plaintiff who is found to be representative of a class commences a suit and thereby

notifies the defendants not only of the substantive claims being brought against them, but

also of the number and generic identities of the potential plaintiffs who may participate in

the judgment."  Id. at 554-55.  Thus,

> [w]ithin the period set by the statute of limitations, the defendants have the
> essential information necessary to determine both the subject matter and
> size of the prospective litigation, whether the actual trial is conducted in the
> form of a class action, as a joint suit, or as a principal suit with additional
> intervenors.

Id. at 555.  Ultimately, the Court concluded that because the class suit was filed 11 days

before the statute of limitations was to run, the potential intervenors had 11 days to file

their motions.  Id. at 561.  The intervenors filed their motions eight days after the district

court refused to certify the class and was thus timely, with three days to spare.  Id.

In Crown, Cork & Seal Co., the Court clarified that American Pipe tolling

extended to independent cases filed by putative class members, and not simply motions to

intervene.  462 U.S. at 346-47, 353-54.  In that case, a plaintiff filed an employment

discrimination case more than two years after receiving a notice of right to sue from the

Equal Employment Opportunity Commission, but within 90 days of the district court

denying class certification for a group of plaintiffs suing the same employer on the same

cause of action.  Id. at 347-48.  The employer argued that the statute of limitations for the

plaintiff was not tolled by the class action because the plaintiff filed a new suit and not a

motion to intervene, rendering American Pipe inapplicable.  Id. at 349.  The Supreme

Court of the United States held to the contrary:  "The filing of a class action tolls the

statute of limitations as to all asserted members of the class, not just as to intervenors."

Id. at 350 (internal quotation marks and citation omitted).

In support of the holding, the Court offered reasons similar to those outlined in

American Pipe.  For example, the Court stated that "[c]lass members who do not file suit

while the class action is pending cannot be accused of sleeping on their rights; Rule 23

both permits and encourages class members to rely on the named plaintiffs to press their

claims."  Crown, Cork & Seal co., 462 U.S. at 352-53.  Further, "[t]olling the statute of

limitations . . . creates no potential for unfair surprise, regardless of the method class

members choose to enforce their rights upon denial of class certification."  Id. at 353.  The

Crown, Cork & Seal Co. Court explained that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." Id. at 354.  Then, "[a]t that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action."  Id.

Based on this line of cases, Plaintiffs argue that the statute of limitations for the unjust enrichment claim was tolled by the filing of the Paulus class action and did not resume running until class certification was abandoned.  Thus, by Plaintiffs' calculation, the limitation period began to run on January 1, 2006, was tolled as of November 21, 2008, when the Paulus action was filed, and resumed running again on January 13, 2010, when the Paulus plaintiffs abandoned class certification, and was then finally tolled by the filing of the present action on December 23, 2010.  Thus, Plaintiffs compute that only three years and ten months have run on the limitation period, making the current suit timely.  Defendants contend that American Pipe tolling does not apply to Plaintiffs' *Complaint* because (1) the Paulus plaintiffs did not file for class certification, (2) the Paulus plaintiffs could not have satisfied the numerosity requirement for Rule 23, (3) Paulus was both a Rule 23 class action and a FLSA collective action, and (4) the Paulus plaintiffs voluntarily dismissed their class allegations.  [Doc 9 at 11-13]

Beginning with Defendants' first and second contentions, there is no indication that the plaintiffs in American Pipe filed for class certification, and the district court in American Pipe did not certify that class precisely because the numerosity requirement could not be met.  414 U.S. at 543.  Thus, these arguments do not distinguish American

Pipe from the present circumstances.  Additionally, Defendants cite no authority for the

proposition that American Pipe tolling does not apply to a suit filed as both a class action

and an FLSA collective action.  In any event, even though the Paulus case was filed as

both a FLSA collective action and a class action, there is no dispute that the unjust

enrichment claim was brought as a Rule 23 class action.  Thus, any policy reasons for not

applying American Pipe to an FLSA collective action, see generally Muhammed v. GBJ,

Inc., No. H-10-2816, 2011 WL 863785, *1-2 (S.D.Tex. 2011), do not affect the

application of American Pipe tolling to the remaining, non-FLSA, claims that were also

filed as part of the Paulus Rule 23 class action.

Finally, Defendants do not explain why the voluntary dismissal of class action

allegations, as opposed to a court-ordered dismissal, would reach back to obliterate

American Pipe tolling of the statute of limitations for non-class members.  The Crown,

Cork & Seal Court explained that

> Class members who do not file suit while the class action is pending cannot
> be accused of sleeping on their rights; Rule 23 both permits and encourages
> class members  to rely on the named plaintiffs to press their claims.  And a
> class complaint notifies the defendants not only of the substantive claims
> being brought against them, but also of the number and generic identities of
> the potential plaintiffs who may participate in the judgment.

462 U.S. at 352-53 (internal quotation marks and citation omitted).  The American Pipe

Court was "convinced that the rule most consistent with federal class action procedure

must be that the *commencement* of a class action suspends the applicable statute of

limitations as to all asserted members of the class who would have been parties had the

suit been permitted to continue as a class action."  414 U.S. at 554 (emphasis added).  If the Court were to rule that the statute of limitations was not tolled in circumstances where named class plaintiffs dismiss class allegations voluntarily, other class members would feel obligated to preserve their claims by filing suit themselves—thereby defeating the purposes of Rule 23.

Plaintiffs' unjust enrichment claim was tolled by the filing of the <u>Paulus</u> class action on November 21, 2008, and the limitations period did not begin to run again until the <u>Paulus</u> plaintiffs dismissed their class allegations on January 14, 2010.  <u>See</u> <u>Crown, Cork & Seal</u>, 462 U.S. at 353 ("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.").  Accordingly, Plaintiffs' unjust enrichment claim is timely filed. Defendants' motion is denied as to this claim.

**E.**   **Fraud**

Defendants argue that Plaintiffs' fraud claim should be dismissed for the same reasons as the unjust enrichment claim.  [Doc 9 at 13]  Plaintiffs respond that this Court should apply the "discovery rule" to delay the accrual of the statute of limitations until such time as they knew or should have known they had a claim.  [Doc 17 at 14-15] Defendants respond that Plaintiffs knew they were not being paid properly, "as originally advertised," as early as February 2006 and that the statute of limitations was triggered at that time.  [Doc 29 at 13]

The statute of limitations for fraud in New Mexico is four years.  NMSA 1978, § 37-1-4 (1880).  Nevertheless, "[i]n actions for relief, on the ground of fraud . . . the cause of action shall not be deemed to have accrued until the fraud . . . complained of, shall have been discovered by the party aggrieved."  NMSA 1978, § 37-1-7 (1880).  Plaintiffs argue that the fraud claim focuses on Defendants' alleged misrepresentation that Plaintiffs would be paid according to the standards required by the Department of Labor.  [Doc 17 at 15]  This claim, Plaintiffs argue, they could not have discovered until "they reasonably should have known that they were not being paid in compliance with DOL's requirements and that Schlumberger was an employer liable for those wages."  [Id]

"When the discovery rule is applicable, the cause of action accrues when a plaintiff acquires knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action."  Butler v. Deutsche Morgan Grenfell, Inc., 2006-NMCA-084, ¶ 34, 140 N.M. 111, 140 P.3d 532 (internal quotation marks and citation omitted).  Put another way,  "the awareness of an injury creates a duty to inquire into its causes."  Id.  Further, although "a plaintiff should not file suit when he or she does not know the identity of the wrongdoer, . . . the duty to inquire includes the duty to attempt to determine the identity of the wrongdoer."  Id. ¶ 36.

For the same reasons that the FLSA statute of limitations has been equitably tolled, so too should the fraud statute of limitations be tolled.  The Court finds that Plaintiffs have sufficiently pleaded that Defendants' concealed their fraud so that Plaintiffs could

not have reasonably discovered it until notified of the <u>Paulus</u> litigation.  Although

Plaintiffs do not plead any facts to support their discovery-rule theory, <u>see</u> <u>Butler</u>, 2006-

NMCA-084, ¶ 28, Defendants placed materials before the Court that demonstrate that

Plaintiffs knew or should have known that they had a fraud cause of action at the time

that the <u>Paulus</u> notices were sent, in May 2009.  As a result, at this time, the Court denies

Defendants' motion to dismiss the fraud claim for failure to file within the statute of

limitations.

**F.**     **New Mexico Minimum Wage Act**

The New Mexico Minimum Wage Act statute of limitations, prior to 2009, read as

follows:

> All suits and actions for the recovery of unpaid overtime compensation or
> damages in connection therewith, whether arising under contract or a state
> or a federal law or administrative ruling, shall be brought within one (1)
> year after the accrual of such a cause of action, or three (3) months after this
> act takes effect, whichever is the later, and not thereafter. Nothing in this act
> [this section] shall be construed as reviving or extending any cause of action
> which may now or hereafter be barred by any other statute.

NMSA 1978, § 37-1-5 (1947).  In 2009, the New Mexico Legislature amended Section

37-1-5 to state that "[a] civil action to enforce any provision of Chapter 50, Article 4

NMSA 1978 shall be commenced within three years after a violation last occurs."

NMSA 1978, § 37-1-5 (2009).  Plaintiffs do not concede that the one-year statute applies,

but regardless, they maintain that the limitation period should be equitably tolled, based

on Defendants' concealment.  [Doc 17 ay 12-14]

The new statute came into effect on June 19, 2009.  Defendants have provided evidence that Plaintiffs had constructive notice of their causes of action in May 2009, when the Paulus notices were issued.  Thus, even equitably tolling the *Complaint* as the Court has done thus far, Plaintiffs' claim under the New Mexico Minimum Wage Act is untimely, if the old statute, with its one-year limitation, applies.  This is so because the one-year period would begin to run in May 2009, but the present action was not filed until December 2010, more than one year later.  As a result, this Court must consider which limitation period applies to the present suit, taking as true Plaintiffs' allegations that the New Mexico Minimum Wage Act cause of action was tolled by Defendants' deception until May 2009.

In New Mexico, "in the civil context, statutory amendments to unexpired statutes of limitation generally are not retroactive because [they do] not apply to any vested or substantive right."  State v. Morales, 2010-NMSC-026, ¶12, 148 N.M. 305, 236 P.3d 24 (alteration in original) (internal quotation marks and citation omitted).  Thus, "amended statutes of limitation generally apply to actions filed after their effective dates even if the events giving rise to the actions occurred prior to their effective dates."  Id. (internal quotation marks and citation omitted).  An exception exists, however, for civil statutes of limitation that are "specifically tied to a statutory right of action."  Id. (quoting Grygorwicz v. Trujillo, 2006-NMCA-089, ¶16, 140 N.M. 129, 140 P.3d 550).  When civil statutes of limitation are "contained in statutory schemes that created the rights of action they limited," they cannot "be considered remedial or procedural because, as

variously characterized by [the New Mexico] Supreme Court, they constitute[] a limitation on the liability created by the statute, 'a condition annexed to the enjoyment of the right in a statute, a 'change affecting substantive rights,' and a 'limitation upon the right' to bring an action under a statute." Grygorwicz, 2006-NMCA-089 at ¶16 (quoting Wall v. Gillett, 61 N.M. 256, 257, 298 P.2d 939, 940 (1956) and Wilson v. New Mexico Lumber & Timber Co., 42 N.M. 438, 442, 81 P.2d 61, 64 (1938)). Accordingly, amendments to such statutes of limitation apply prospectively only, absent evidence of a legislative intent to the contrary. See Wall, 61 N.M. at 257-58, 298 P.2d at 940-41 (holding that amendments to the statute of limitations in the Wrongful Death Act, NMSA 1978, § 41-2-1 et seq., apply prospectively only); Wilson, 42 N.M. at 442-43, 81 P.2d at 64 (holding that amendments to the statute of limitations in the Workers' Compensation Act, NMSA 1978, § 52–1–1, et seq., apply prospectively only).

Section 37-1-5 is specifically tied to a statutory right of action under the New Mexico Minimum Wage Act. See § 37-1-5 (providing a limitation on all civil actions "to enforce any provision of Chapter 50, Article 4 NMSA 1978"). Accordingly, "not only the remedy is involved, but also the right to maintain such action," and statutory amendments to Section 37-1-5 must be "given only prospective effect" unless there is evidence of a legislative intent to the contrary. Wall, 61 N.M. at 257, 298 P.2d at 940; see Andrew v. Schlumberger Tech. Corp., No. CIV 10-1239 JB/GBW, Doc. 18 at 15 (D.N.M. Aug. 24, 2011) (holding that the 2009 statutory amendment to Section 37-1-5 did not apply retroactively to the plaintiff's claim, in relevant part, because the statute of

limitations was "specifically tied to a statutory right of action") (internal quotation marks and citation omitted).  There is no evidence that the legislature intended the 2009 amendment to Section 37-1-5 to apply retroactively and, therefore, the Court concludes that Plaintiff's New Mexico Minimum Wage Act claim is time-barred.  Defendants' *Motion to Dismiss* is granted on this issue.

## G.    Wyoming Law

Defendant Schlumberger's final argument is that Plaintiffs' claims under Wyo. Stat. Ann. § 27-4-104 (1990) and Wyo. Stat. Ann. § 27-4-114 (1876) should be dismissed.[1]  Defendant Schlumberger contends that Plaintiffs have alleged no facts to support a claim under Section 27-4-104 and that Section 27-4-114 is unconstitutional. Defendant Schlumberger's concede that Plaintiffs have a potential claim under Section 27-4-104 if Section 27-4-114 is determined to be constitutional.  For this reason, I begin by considering Defendant Schlumberger's constitutional arguments relating to Section 27-4-114.

## 1.    Section 27-4-114

Section 27-4-114 states that

Any alien or foreigner who shall hereafter perform labor or services for any person or persons, company or corporation within this state, shall be entitled to recover from such person or persons, company or corporation, a reasonable compensation for such labor or services, notwithstanding such person or persons, company or corporation may have paid any other party or parties for the same; and in actions for the price of such labor or services,

_____

[1]  Plaintiffs have pleaded this claim only against Defendant Schlumberger, and not against any other defendant.

> no defense shall be admitted to the effect that the defendant or defendants had contracted with other parties who had, or pretended to have, power or authority to hire out the labor or services of such party or parties, or to receive the pay or price for such labor or services.

Defendant Schlumberger raises two challenges to Section 27-4-114.  First, Defendant Schlumberger contends that because the term "reasonable compensation" is not defined by the statute and has never been interpreted by any court in this context, the statute is void for vagueness.  [Doc 9 at 16]  Second, Defendant Schlumberger argues that because Section 27-4-114 prevents it from raising a particular defense—that "the . . . defendants had contracted with other parties who had, or pretended to have, power or authority to hire out the labor or services of such party or parties. . . ."—the statute violates substantive due process principles.  Each argument is addressed in turn.

**a.      Void for Vagueness**

"A statute violates the due-process guarantee of the Fourteenth Amendment if it 'forbid[s] or requir[es] conduct in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application." Kleinsmith v. Shurtleff, 571 F.3d 1033, 1038 (10th Cir. 2009) (alterations in original) (quoting Baggett v. Bullitt, 377 U.S. 360, 367 (1964)).   The Supreme Court of the United States has instructed that there

> are matters which in the course of business come to be fairly well settled and understood. A standard thus developed and accepted in actual practice, when made the test of compliance with legislative commands or prohibitions, usually meets the requirement of due process of law in point of being sufficiently definite and intelligible.

<u>A.B. Small Co. v. Am. Sugar Refining Co.</u>, 267 U.S. 233, 241-42 (1925).

Defendant Schlumberger focuses on the language in Section 27-4-114, which permits a foreigner to recover a "reasonable compensation," and argues that "a business like Schlumberger (or RigStaff, or ExxonMobil, etc.) has absolutely nothing to consult in order to determine how to ensure, or how likely to be in, compliance with this statute." [Doc 9 at 20]  To that end, Defendant Schlumberger points to a myriad of open questions regarding the basis for computation of compensation.  The statute, however, does not require "compliance."  The statute permits "[a]ny alien or foreigner who shall hereafter perform labor or services for any . . . company or corporation within this state, . . . *to recover* from such . . . company or corporation, a reasonable compensation for such labor or services. . . ."  Section 27-4-114 (emphasis added).  Thus, Defendant Schlumberger is not required to *comply* with the statute to avoid liability.  Rather, the statute permits Plaintiffs *to recover* a reasonable compensation from Defendant Schlumberger for work performed—the question is one of damages, and not liability.

As the Supreme Court of the United States stated in <u>A.B. Small Co.</u>, some matters are "fairly well settled and understood," and there certainly exist standards or comparable wages that can be used to determine reasonable compensation for a foreign oil field worker in Wyoming.  Whether such standards result in compensation that would be reasonable under the circumstances of this case is for the jury to decide, based on the evidence offered by the parties.  <u>See</u> <u>Ecosystem Res., L.C. v. Broadbent Land & Res.,</u>

L.L.C., 2007 WY 87, ¶ 11, 158 P.3d 685 ("Ordinarily, what is reasonable is a question of fact unless reasonable minds could not differ.").

The Court therefore finds that Section 27-4-114 is not unconstitutionally vague for the reasons proffered by Defendant Schlumberger.  Instead, the statute presents a jury question regarding the reasonableness, under the circumstances, of compensation owed for the performance of services.

**b.**     **Violations of Due Process**

It is well established that the Due Process Clause "cover[s] a substantive sphere . . ., barring certain government actions regardless of the fairness of the procedures used to implement them."  Seegmiller v. LaVerkin City, 528 F.3d 762, 766-67 (10th Cir. 2008) (alteration in original) (internal quotation marks and citation omitted).  As a result, "the substantive component of the Due Process Clause provides heightened protection against government interference with certain fundamental rights and liberty interests, even when the challenged regulation affects all persons equally."  Powers v. Harris, 379 F.3d 1208, 1215 (10th Cir. 2004) (internal quotation marks and citations omitted).  Our Circuit has further explained that

> To comport with the limited scope of substantive due process protection, economic legislation need only be rationally related to a legitimate government interest.  Under rational basis review, therefore, there is no need for mathematical precision in the fit between justification and means, and the law need not be in every respect logically consistent with its aims to be constitutional.  It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.  Moreover, economic legislation comes to the

> Court with a presumption of constitutionality, and the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.  Thus, it is difficult to exaggerate the burden that a party must overcome to demonstrate that economic legislation fails rational basis review.

KT. & G Corp. v. Attorney General of the State of Okla., 535 F.3d 1114, 1142 (10th Cir.

2008) (quoting Star Scientific, Inc. v. Beales, 278 F.3d 339, 348-49 (4th Cir. 2002)).  The

parties agree that Section 27-4-114 is an "economic regulation."

Defendant Schlumberger argues that the statute's limitation of an affirmative

defense is not rationally related to a legitimate government purpose.  Again, Section 27-4-

114 states that

> no defense shall be admitted to the effect that the defendant or defendants had contracted with other parties who had, or pretended to have, power or authority to hire out the labor or services of such party or parties, or to receive the pay or price for such labor or services.

Defendant Schlumberger insists that "a worker could sue, claiming that he did not receive

a 'reasonable compensation' from Schlumberger; and Schlumberger would be flat-out

precluded from explaining its arrangement with Rigstaff to the fact-finder." [Doc 9 at 21]

The statute does not prevent Defendant Schlumberger from presenting evidence that

Plaintiffs received payment for services from some other source—such evidence would

certainly be a factor in the "reasonable compensation" calculus.  Section 27-4-114

prevents Defendant Schlumberger from denying all liability for payment simply because

it contracted to pay RigStaff the compensation for Plaintiffs—Schlumberger is precluded

from defending itself from liability by claiming that some other party was supposed to pay the worker.

Further, although Defendant Schlumberger claims that the statute's defense bar has no rational relationship to a legitimate government purpose, Plaintiffs contend in response that the limitation permits the state of Wyoming to ensure that foreign laborers receive the benefit of a reasonable wage, even if the employer or purported employer has made use of a dishonest labor broker.  Plaintiffs further maintain that this limitation was designed to address a very real problem of brokered foreign labor, which sprang up at the turn of the last century with the influx of migrant railroad workers.  Regardless of the historical circumstances, Plaintiffs have more than justified this economic regulation as rationally related to a legitimate purpose.

For additional support for the statute's unconstitutionality, Defendant Schlumberger also repeatedly refers to the age of Section 27-4-114, which was enacted in 1876, as well as the fact that the Attorney General of Wyoming has declined to intervene in this action to defend the statute and that the statute has apparently never been litigated. Defendant Schlumberger provides little authority for this Court to strike down a state statute because that statute is old and neglected.

**2.**     **Section 27-4-104**

The parties appear to agree, at this stage, that if the claim under Section 27-4-114 survives, Plaintiffs' claim under section 27-4-104 also remains viable.

Accordingly, the Court denies Defendant Schlumberger's *Motion* to the extent that it argues that Plaintiffs' Wyoming law claims should be dismissed.

### III.   CONCLUSION

For the reasons outlined above,

**IT IS THEREFORE ORDERED** that *Schlumberger Defendants' Opposed Motion to Dismiss* [Doc 8] is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that *Defendant RigStaff, Ltd., RigStaff Texas LLC, Douglas White, Joseph P. Delorenzo, And Walter Bliss' Motion To Dismiss, Answer, And Affirmative And Other Defenses* [Doc 11] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED** this 29th day of March, 2012 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
United States District Judge